29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee
v.
Joseph ALDANA, Defendant-Appellant
 No. 92-50716.
 United States Court of Appeals, Ninth Circuit.
 Argued April 4, 1994.
Submission Deferred April 4, 1994.
Submitted June 17, 1994.
Decided June 29, 1994.
 
 Appeal from the United States District Court for the Central District of California, No. CR-90-0065-SVW-14; Stephen V. Wilson, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before: BROWNING, PREGERSON, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Joseph Aldana ("Aldana") appeals his jury conviction, alleging ten violations of the district court. Aldana is one of at least seventeen defendants indicted for participating in a large and lengthy conspiracy to distribute and possess cocaine. We find that Aldana's claims lack merit, and therefore we affirm.
 
 Pre-Indictment Delay
 
 3
 We review a denial of a motion to dismiss for impermissible pre-indictment delay for an abuse of discretion. United States v. Butz, 982 F.2d 1378, 1380 (9th Cir.), cert. denied, 114 S.Ct. 250 (1993). We apply a two-part test to determine if pre-indictment delay violated a defendant's due process rights: (1) the defendant has a heavy burden to prove actual, non-speculative prejudice from the delay; and (2) if prejudice exists, then the length of the delay, when balanced against the reason for the delay, must offend those fundamental conceptions of justice which lie at the base of our civil and political institutions. Id.; United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir.1992) (citations and quotations omitted). We review a finding of prejudice for clear error, keeping "the defendant's heavy burden in mind." Huntley, 976 F.2d at 1290.
 
 
 4
 Aldana has not demonstrated actual prejudice. "[P]rotection from lost testimony, as well as other evidence, generally falls solely within the ambit of the statute of limitations." Huntley, 976 F.2d at 1290 (no actual prejudice suffered despite seven and a half month delay when defendant claimed loss of witness testimony and evidence). Here, Aldana's allegations relate to his inability to locate a witness and to another witness' lapse of memory. These claims of prejudice fail to "demonstrate by definite and non-speculative evidence that the loss of testimony meaningfully has impaired [Aldana's] ability to defend himself." Id.; see also United States v. Breitkreutz, 8 F.3d 688, 690 (9th Cir.1993) (thirty-one month delay not prejudicial when defendant offered no evidence that testimony of unavailable witness would have been exculpatory); United States v. Sherlock, 962 F.2d 1349, 1354 (9th Cir.1989) (no actual prejudice from three-year delay and loss of witnesses' testimony and physical evidence), cert. denied, 113 S.Ct. 419 (1992); United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985) (twenty-three month delay justified despite allegations of loss of witness testimony and impairment of another witness' testimony due to dimming of memory), cert. denied, 474 U.S. 1102 (1986). Rather, Aldana speculates about what two witnesses may have testified and does not show that the missing testimony prejudiced his right to defend himself because it was crucial to his defense. The government obtained an indictment against Aldana nineteen months after the other charges of criminal activity, which is clearly within the applicable five-year statute of limitations. See 18 U.S.C. Sec. 3282 (1988) ("no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found ... within five years next after such offense shall have been committed").
 
 
 5
 Because Aldana has not shown actual prejudice resulting from the government's waiting nineteen months before indicting him, we need not address the balancing part of the test for pre-indictment delay.
 
 Suppression of Wiretap Evidence
 
 6
 Aldana attempted to join the argument of several other defendants convicted on related charges who had appeals pending before our court. Because the panel that decided the wiretap evidence issue held that it was properly admitted, Aldana's claim fails. See United States v. Miller, No. 91-50221 (Memorandum Disposition, 9th Cir. filed May 13, 1994).
 
 Quash of Defense Subpoena
 
 7
 We "review[ ] an order to quash a subpoena only for abuse of discretion. Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." Donoghue v. Orange County, 848 F.2d 926, 931 (9th Cir.1987) (internal quotations omitted); see also United States v. Polizzi, 801 F.2d 1543, 1551 (9th Cir.1986).
 
 
 8
 Aldana argues that the district court erred by quashing the subpoena he issued for the testimony of James Gleeson, an attorney who had represented Aldana in January or February 1991 in a driving under the influence case. Aldana contends that Gleeson's testimony at trial was essential to impeach the credibility of Harrinson, the government's witness who testified against Aldana because the government agreed to recommend a reduced sentence for Harrinson. The district court, questioning the relevance of Gleeson's testimony and stating that "[i]mpressions unfortunately don't count, especially in these circumstances[,]" granted Gleeson's motion to quash the subpoena.
 
 
 9
 The court did not abuse its discretion. First, Aldana had a declaration from Gleeson stating the extent of his recollection of the events, and the district court judge acted within his discretion by finding that Gleeson's "impressions" need not be heard at trial. Second, Gleeson was not the only witness Aldana used to impeach Harrinson. Third, Harrinson admitted lying to Special Agent Marzullo, pleading guilty to a narcotics offense, and entering a plea agreement with the government whereby the government would recommend a reduced sentence for Harrinson if he would testify against his conspirators. In addition, the court instructed the jury with regard to Harrinson's testimony, stating that it should "consider this witness' testimony with great caution ... greater caution than that of other witnesses ... you should consider the extent to which it may have been influenced by the plea agreement he reached with the government." The district court acted within its discretion by granting Gleeson's motion to quash. See Polizzi, 801 F.2d at 1551 (district court did not abuse its discretion by granting witness' motion to quash because testimony would have been extrinsic evidence attacking the credibility of a government informant and would not have created an evidentiary conflict).
 
 Evidence Under Fed.R.Evid. 404(b)
 
 10
 We review the admission of evidence of other crimes pursuant to Federal Rule of Evidence 404(b) and the district court's balancing the probative value of the evidence against is prejudicial effect under Federal Rule of Evidence 403 for an abuse of discretion. United States v. Kahn, 993 F.2d 1368, 1376 (9th Cir.1993). Evidence is admissible under Rule 404(b) if: (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) in cases where knowledge and intent are at issue, the act is similar to the offense charged. United States v. Mayans, No. 92-50530, slip op. 1603, 1621 (9th Cir. Feb. 9, 1994).
 
 
 11
 Aldana contends that the district court abused its discretion by admitting evidence that Aldana had participated in a drug transaction in 1986. Aldana's argument is meritless in light of our decision in United States v. Hadley, 918 F.2d 848, 852 (9th Cir.1990), cert. granted, 112 S.Ct. 1261, and cert. dismissed, 113 S.Ct. 486 (1992), in which we stated that
 
 
 12
 [the defendant] cannot preclude the government from proving intent simply by focussing his defense on other elements of his crime. [The defendant's] choice of defense did not relieve the government of its burden and proof and should not prevent the government from meeting this burden [by introducing evidence under Rule 404(b) to prove intent].
 
 
 13
 See also Mayans, slip op. at 1618 (affirming language in Hadley and stating that "the fact that appellant's defense was non-participation does not render the issue of knowledge irrelevant"). Evidence of Aldana's prior drug transaction is relevant, and Aldana does not contend that the evidence does not meet the requirements of Rule 404(b).
 
 
 14
 Aldana's additional argument that the court should have excluded the evidence under Rule 403 fails, since his knowledge and intent with respect to the prior drug transaction evidence his knowledge and intent with respect to his involvement in the alleged conspiracy, especially since many of the messages on the tapes were coded. The evidence of a prior drug transaction is also probative on the issues of knowledge and intent, considering the similarity between the acts charged and the prior transaction. See Hadley, 918 F.2d at 852 (evidence highly probative on question of intent when offense charged and prior acts are similar). Furthermore, the district court gave a limiting instruction to the jury, telling it that "[y]ou have heard evidence of other acts by the defendant. You may consider that evidence only as it bears on the defendant's intent, knowledge, motive or plan and for no other purpose." This instruction limits any prejudicial effect of the evidence. See id. (instruction given by district court limits prejudicial effect).
 
 Voice Identification
 
 15
 Aldana's argument that the district court abused its discretion by admitting the testimony of Special Agent Marzullo because it lacked foundation and was the only corroboration of Harrinson's identification of Aldana's voice on the tapes also fails. Rule 901(b)(5) permits authentication by a person who has heard the voice "at any time under circumstances connecting it with the alleged speaker." Fed.R.Evid. 901(b)(5). Marzullo spoke with Aldana for thirty or forty minutes after arresting him, during the drive from Lawndale to downtown Los Angeles and on the telephone when Aldana called Marzullo and identified himself, and further, Marzullo supervised the wiretaps. Circumstantial evidence connects Aldana to the telephone conversations, since one telephone call was made to Aldana's home and one to Automania, where Aldana worked. The district court properly admitted Marzullo's testimony. See United States v. Thomas, 586 F.2d 123, 133 (9th Cir.1978) (agent's lay opinion testimony on voice identification proper when agent had spoken to defendant three times over the telephone); United States v. Turner, 528 F.2d 143, 163 (9th Cir.) (direct and circumstantial evidence may establish voice identification, and officer who worked on wiretaps and talked with defendants in person at time of arrests could testify regarding voice identification, especially since he was subject to a full and complete cross-examination), cert. denied, 423 U.S. 996 (1975).
 
 Jury's Review of Transcripts
 
 16
 A district court's decision on use of transcripts to aid the listening of tape recordings is reviewed for an abuse of discretion. United States v. Booker, 952 F.2d 247, 249 (9th Cir.1991).
 
 
 17
 Aldana's argument that the district court improperly allowed the jury to use the transcripts as an aid while listening to the tapes fails. Although the transcripts identified Aldana as a speaker on the recordings, the court did not admit them into evidence and specifically informed the jury that it could use the transcripts only as an aid while listening to the tapes but could not take the books with them or using them during deliberations. The court stated:
 
 
 18
 The evidence is the tapes. These books are given to you, these transcripts as an aid to your understanding the tapes, but your focus should be on what you hear. That is don't be overly impressed with the transcript. Listen to the tape. If there is something in the tape that says something, if you don't hear it, then that is the evidence. As I say these are aids that will help you. But, what you want to focus on is what you hear. So, they are given to you for that purpose only.
 
 
 19
 Either Harrinson, one of the speakers on the tape, or Marzullo, the primary agent investigating the alleged conspiracy and supervising the wiretaps, testified to the accuracy of the transcripts, and allowing the jury to use the transcripts as an aid while listening to the tapes was proper. See Booker, 952 F.2d at 249 (jury could look at transcripts while tape was played, since agent testified to accuracy of transcripts and district judge gave jurors a limiting instruction).
 
 Expert Testimony
 
 20
 We review a district court's decision to admit or exclude expert testimony for an abuse of discretion. United States v. Rahm, 993 F.2d 1405, 1410 (9th Cir.1993) ("Generally a district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts."); see also United States v. Aguon, 851 F.2d 1158, 1171 (9th Cir.1988) (Although testimony may assist trier of fact, "the trial court has broad discretion to admit or exclude such testimony.").
 
 
 21
 Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. "The main inquiry is whether the jury will receive appreciable help from expert testimony." United States v. Christophe, 833 F.2d 1296, 1299 (9th Cir.1987) (internal quotations omitted).
 
 
 22
 Aldana argues that the district court should have allowed Norman Perle to testify as a expert on voice identification, since Perle would have testified that Whitmore, not Aldana, spoke the incriminating words on the tapes.[1] The district court questioned Perle outside the presence of the jury and prohibited him from testifying, because it found that his testimony would not help the jury. The court stated that
 
 
 23
 I believe the transcripts, I mean the audio tapes are very, very clear, as I've said uniquely clear for these kinds of cases. I think it's a Jury question.
 
 
 24
 And after listening to part of this expert's anticipated testimony, I find that his testimony would not be of substantial assistance to the Jury in their making their critical evaluation of the tapes. To the contrary, it seems that his graphs and other analysis would merely distract, cloud and detract from their fact finding function.
 
 
 25
 And, furthermore, while ultimately, of course, it's a Jury question, and there very well may be a question as to who the third voice is on the tape, there absolutely was a different voice on the tape. Whether it's Aldana or someone else, that can be for the Jury. But, for this expert to tell us that that voice attributed to Aldana was the voice of the caller, Whitmore, is in my view so far from any reasonable interpretation of the tape that he's not worthy of acceptance as a (sic) expert on voice analysis. And furthermore, the tapes are clear and they don't need any enhancement. So, I am exercising my judicial discretion for those reasons to strike his testimony.
 
 
 26
 Perle's testimony was not essential to question whether Aldana's voice was on the tapes, "[s]ince aural voice identification is not a subject of expert testimony, the requisite familiarity may be acquired either before of after the particular speaking which is the subject of the identification." Fed.R.Evid. 901 advisory committee's note, example (5). In fact, Aldana used his brother-in-law, Joe Medina, as a lay witness who testified that he did not believe the voice on the tapes was Aldana's. The court allowed Medina to render his opinion on the voice identification based on the close relationship between Medina and Aldana. The court did not prevent Aldana from introducing evidence to contradict the voice identifications of Harrinson and Marzullo, and the defense had the opportunity to present fallacies in either Harrinson's or Marzullo's identification through cross-examination. See Christophe, 833 F.2d at 1300 (cross-examination sufficient to bring to the jury's attention difficulties in the identification of the defendants, thus exclusion of expert testimony proper). The court did not abuse its discretion by prohibiting Perle's testimony, which it found unnecessary and would confuse, rather than help, the jury. See Fed.R.Evid. 702, advisory committee's note.
 
 Direct Examination of Defense Witness
 
 27
 Aldana contends that the district court improperly limited his direct examination of Joe Medina, because it prevented Aldana from questioning Medina about Harrinson's ongoing use of cocaine and distribution to his friends. The court sustained the government's objection to Aldana's line of questioning, stating "[w]hat's the relevance of getting into Harrinson and cocaine when he has told the world that he's done nothing but sell cocaine and that he himself uses cocaine; what is the point of this[.]"
 
 
 28
 The district court's limiting Aldana's examination of Medina regarding Harrinson's drug use was proper and not an abuse of discretion. United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir.1989) (district court did not abuse its discretion by foreclosing inquiry on past drug use by witnesses, since defendant made no foundational showing that evidence was relevant to witnesses credibility), cert. denied, 493 U.S. 857 (1989); United States v. Taylor, 716 F.2d 701, 710 (9th Cir.1983) (limiting permissible scope of questioning on redirect examination). Harrinson admitted to using and selling cocaine, trafficking in narcotics, and lying to Marzullo after his arrest; he testified regarding his plea agreement with the government, thus revealing his incentive to testify against Aldana; and the court instructed the jury that it "should consider Harrinson's testimony with greater caution than that of ordinary witnesses ... and the extent to which it may have been influenced by the plea agreement he reached with the government." Finally, evidence of specific instances of conduct of a witness is generally not admissible to attack that witness' credibility, Fed.R.Evid. 608(b), and Aldana only makes general allegations that Harrinson's drug use is relevant because it would "dim his memory and reduce his sense of perception." The jury had sufficient information to assess Harrinson's credibility, without any testimony from Medina on Harrinson's drug use.
 
 Judicial Misconduct
 
 29
 Aldana claims his trial was unfair because the district court's comments to defense counsel gave the jury the impression that "the judge thought that Mr. Aldana should be convicted, and that his attorney's advocacy and arguments did not merit serious consideration." Since Aldana did not object to the court's comments at trial or move for a mistrial, we review the claim of judicial misconduct for plain error. United States v. Sanchez-Lopez, 879 F.2d 541, 551 (9th Cir.1989); Fed.R.Crim.P. 52(b). "Plain error exists only in exceptional circumstances when a substantial right of a defendant is affected." Sanchez-Lopez, 879 F.2d at 551.
 
 
 30
 Aldana's claim is completely without merit, since the district court's comments were appropriate in context, and the court gave defense counsel considerable leeway before reprimanding him for asking leading questions. The court instructed the jury that it "must not read into these [jury] instructions or into anything the Court may have said or done any suggestion as to what [its] verdict should be." See Sanchez-Lopez, 879 F.2d at 553 (judge's instruction to jury that his comments should not affect their verdict obviated any possibility that jury interpreted them as a remark on defendant's credibility). The district court's comments in this case clearly do not amount to plain error, meriting a reversal of Aldana's conviction.[2]
 
 
 31
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Aldana's assertion that the district court improperly permitted Marzullo to testify yet prohibited Perle from testifying is meritless, since we employ different standards for expert and lay witnesses; the district court's rulings reflect that it properly used the standard for expert witnesses when evaluating Perle and the standard for lay witnesses when evaluating Marzullo. See Fed.R.Evid. 701, 702, 901(b)(5)
 
 
 [2]
 Aldana argues that the cumulative impact of the alleged errors warrants a reversal of his conviction. Since we find none of Aldana's allegations persuasive, this claim fails