77 F.3d 491
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey Howard VAN POYCK, Defendant-Appellant.
 No. 94-50318.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 13, 1995.
Decided Feb. 20, 1996.
 
 1
 Before: HALL and NOONAN, Circuit Judges, and SHUBB*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Jeffrey Howard Van Poyck appeals his convictions of conspiracy, 18 U.S.C. § 371, and armed bank robbery, 18 U.S.C. § 2113(a)(2). Specifically, he appeals the district court's denial of his motions: (1) to dismiss for violation of the Speedy Trial Act, 18 U.S.C. § 3161; (2) to compel discovery of transcripts of recorded telephone conversations he claims were required to be disclosed under the Jencks Act (18 U.S.C. § 3500), Brady v. Maryland, and Federal Rule of Criminal Procedure 16(a)(1)(A); (3) to suppress statements made in violation of the Sixth Amendment; and (4) to exclude the use of transcripts of his telephone conversations as a jury aid. Because we find that these claims lack merit, we affirm.[1]
 
 I.[2]
 
 4
 Van Poyck first argues that his Speedy Trial Act rights have been violated. The Act imposes a 70 day time limit. 18 U.S.C. § 3161(c)(1). The Speedy Trial clock begins ticking at the later of the defendant's indictment or initial appearance. Id. It stops ticking when the defendant moves to dismiss on Speedy Trial grounds. United States v. Wirsing, 867 F.2d 1227, 1230 (9th Cir.1989) (citing United States v. Berberian, 851 F.2d 236, 239-40 (9th Cir.1988), cert. denied, 489 U.S. 1096 (1989)).[3] Van Poyck's clock started upon his June 4 indictment and stopped when he filed his December 3 motion to dismiss; 180 days elapsed.
 
 
 5
 Not all periods of delay are included in the Act's calculus, however. Indeed, Van Poyck does not contest the exclusion of two such periods. The period from August 3 to September 28 is excluded pursuant to a stipulation between the parties. Moreover, the period between November 9 and December 3 is automatically excluded under 18 U.S.C. § 3161(h)(1), which excludes the delay resulting from any pretrial motions. 18 U.S.C. § 3161(h)(1). Van Poyck had motions pending during this time.
 
 
 6
 Given this analysis, 101 days remain unexcluded (60 days between June 4 and August 3, and 41 days between September 28 and November 9). The Government argues that 18 U.S.C. § 3161(h)(7) excludes the period after October 1, the date on which Van Poyck's codefendant was joined.
 
 
 7
 Section 3161(h)(7) permits a "reasonable period of delay" to be excluded after the joinder for trial of a codefendant for whom the time for trial has not run. 18 U.S.C. § 3161(h)(7).[4] Van Poyck's codefendant was joined on October 1. The Government contends that the delay from October 1 to November 9 (the date when Van Poyck himself stopped the clock by filing motions) is "reasonable" because it is in large part dictated by the Speedy Trial Act itself, which requires the district court to give a defendant at least 30 days to prepare for trial, 18 U.S.C. § 3161(c)(2).
 
 
 8
 Because Van Poyck's codefendant was entitled to at least 30 days to prepare, the delay is applicable as to Van Poyck. Stopping the clock for both codefendants when one of them needs time to prepare for trial is not uncommon. United States v. Butz, 982 F.2d 1378 (9th Cir.1993) (applying one-month exclusion to both codefendants when one defendant needed time to prepare for trial); United States v. Piteo, 726 F.2d 53 (2d Cir.), cert. denied, 467 U.S. 1206 (1984) (upholding same for two and a half month continuance). Because the Speedy Trial Act itself requires a 30 day delay for Van Poyck's codefendant, and because a codefendant's preparation for court is a valid reason to exclude time for all defendants, we find that the 39 day delay under § 3161(h)(7) is reasonable as to Van Poyck and therefore excludable.
 
 
 9
 Because only 63 days remain, the defendant's Speedy Trial Act rights were not violated.
 
 II.
 
 10
 Van Poyck next argues that his conviction should be reversed because the government failed to turn over tape recordings of conversations he made while in the Metropolitan Detention Center ("MDC"). He asserts that the prosecutor violated a duty to disclose the tapes that arose from three independent sources: the Jencks Act, 18 U.S.C. § 3500(b); Brady v. Maryland, 373 U.S. 83 (1963); and Federal Rule of Criminal Procedure 16(a)(1)(A). We find Van Poyck's contentions without merit.
 
 
 11
 Under the Jencks Act, the government must hand over any statements of its witnesses which are in its possession and which relate to the subject matter of their testimony. 18 U.S.C. § 3500(b). A defendant's motion for this material is timely only if made after the witness testifies on direct examination for the government. Ogden v. United States, 303 F.2d 724, 732 (9th Cir.1962) ("As to statements relating to the subject of potential government witnesses not yet heard, the defendant['s motion] was premature."). Because Van Poyck requested the tapes more than four months before trial, and did not renew his request after the government witnesses testified, his motion for Jencks material was untimely.[5]
 
 
 12
 Brady v. Maryland holds that "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or punishment." Brady, 373 U.S. at 87. To make out a Brady claim, a defendant must show that: (1) the prosecution possesses evidence; (2) the evidence is exculpatory; and (3) the evidence is material. Failure to disclose such evidence may require reversal. Id.
 
 
 13
 Evidence is "material" only if there is a "reasonable probability of a different result," which exists when confidence in the outcome of the trial is undermined. Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995); United States v. Agurs, 427 U.S. 97, 112 (1976) ("If the omitted evidence creates a reasonable doubt that did not otherwise exist, Constitutional error has been committed."). Because the district court concluded that the undisclosed tapes contained only cumulative evidence, we find that their exclusion does not create a "reasonable probability" of a different result at trial.
 
 
 14
 Federal Rule of Criminal Procedure 16(a)(1)(A) provides: "Upon the request of the defendant the government must disclose to the defendant and make available for inspection, copying or photography: any relevant written or recorded statement made by the defendant ... within the possession, custody, or control of the government." Fed.R.Crim.P. 16(a)(1)(A). A statement is "relevant" if relevant "to any possible defense or contention that a defendant might assert." United States v. Bailleaux, 685 F.2d 1105, 1114 (9th Cir.1982). If relevant, the statement must be disclosed "if it is in the custody or control of the government"--not just if it is "in the possession of the attorney for the government." Id. at 1113 (emphasis added); see also id. (holding that tape recordings in the FBI's possession are within the government's control under this Rule). Failure to disclose warrants reversal only if "it is more probable than not that the error materially affected the verdict." Id. at 1115 (citations omitted).
 
 
 15
 In Bailleaux, the defendant appealed his conviction because the prosecutor failed to disclose tape recordings of one of the defendant's telephone conversations. The prosecutor argued that he did not violate Rule 16(a)(1)(A) because the tapes were not within the "possession, custody, or control of the government" because he had not receive them until the night before he used the tapes at trial. The court disagreed, finding that the prosecutor violated the Rule because the FBI had had "possession, custody, or control" of the tapes; it concluded that the "government" included more than just the prosecutor. Id. at 1113. Because the tapes merely corroborated the defendant's other testimony, however, the court affirmed the defendant's conviction.
 
 
 16
 Bailleaux controls here. Here the MDC possessed the tape recordings; because the MDC, like the FBI, is a branch of the Justice Department, the tapes were within the "possession, custody, or control of the government" while MDC held them. Even if we assume that the tapes contained relevant evidence, however, the district court found the evidence on the excluded tapes cumulative; this is indistinguishable from the tapes in Bailleaux which merely corroborated other testimony. In neither case would the omitted evidence materially affect the verdict and in neither case is reversal required.
 
 III.
 
 17
 Van Poyck further contends that his May 25, post-arraignment, statements were taken in violation of his Sixth Amendment right to counsel. Although Van Poyck originally prepared a motion involving this claim, the motion he eventually filed omitted it. Thus, we review only for plain error. Fed.R.Crim.P. 52(b); United States v. Karterman, 60 F.3d 576 (9th Cir.1995). Plain error is "clear" or "obvious" error that affects a defendant's substantial rights, United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir.1994), and is recognized to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process, United States v. Olano, 113 S.Ct. 1770, 1779 (1993).
 
 
 18
 We are not convinced that the district court committed any error, let alone plain error, in admitting Van Poyck's statements. It is well settled that once a defendant invokes his Sixth Amendment right to counsel, the police must not initiate further questioning. Michigan v. Jackson, 475 U.S. 625, 627 (1986). If the defendant himself initiates further conversation during which he confesses, however, his Sixth Amendment rights are not violated. Patterson v. Illinois, 487 U.S. 287, 291 (1988).
 
 
 19
 In this case, Van Poyck has presented no evidence that he invoked his right to counsel before making his May 25 statements; because he did not, the protection afforded by Jackson and Patterson never attached and his statements are admissible. Patterson, 487 U.S. at 291.
 
 IV.
 
 20
 Van Poyck argues lastly that the district court erred in permitting the jury to use transcripts of the MDC tape recordings.
 
 
 21
 Before written transcripts of recorded evidence can be used as a jury aid, the following usually occurs: (1) the judge reviews the transcripts for accuracy; (2) the agent who participated in the taped conversation testifies as to the accuracy of the transcripts; and (3) the judge gives the jury a limiting instruction telling it to use the tapes solely as an aid (and not as evidence in place of the tapes). United States v. Booker, 952 F.2d 247 (9th Cir.1991). Because the district court treated the transcripts as an aid, Booker applies.
 
 
 22
 The Booker factors are not absolute prerequisites to admissibility. In Booker itself, the appellate court held that the judge did not abuse his discretion when he permitted transcripts to be used as an aid, even though he never reviewed the transcripts for accuracy. Booker, 952 F.2d at 250. Similarly, in United States v. Pena-Espinoza, 47 F.3d 356 (9th Cir.1995), the court upheld the admission of wiretap transcripts which had been translated from Spanish into English, even though the transcripts had not been independently verified for accuracy by the court or other witnesses. Because the defendant made only "largely conclusory allegations of possible inaccuracy," id. at 360, the court concluded that the accuracy of the transcripts were never seriously disputed and that the district court did not therefore abuse its discretion in admitting them.
 
 
 23
 The district court in this case likewise did not abuse its discretion by admitting transcripts of MDC recordings. To begin with, the judge instructed the jury that the transcripts were only to be used as an aid. Moreover, like the defendant in Pena-Espinoza, Van Poyck never seriously disputed the accuracy of the transcripts; indeed, his counsel admitted at a pretrial hearing that he did not object to the accuracy of the transcripts. Nor has Van Poyck shown this panel that his claims of inaccuracy are anything other than "conclusory allegations." The use of the transcripts was not erroneous.
 
 
 24
 We therefore AFFIRM Van Poyck's conviction on these grounds.
 
 
 
 *
 The Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We dispose of Van Poyck's other claims in a separate published opinion
 
 
 [2]
 The facts of this case are set out in the published opinion
 
 
 [3]
 Delay after the filing of the motion is irrelevant unless the defendant files a new motion to dismiss. Wirsing, 867 F.2d at 1230. This is no evidence that Van Poyck ever filed a second motion to dismiss, so further delay is irrelevant
 
 
 [4]
 Section 3161(h)(7) does not apply if a motion for severance is granted. Although both Van Poyck and his codefendant moved for severance, the district court denied both motions
 
 
 [5]
 Because Van Poyck's motion was untimely, we need not decide whether the tapes were "in the possession of the government" for purposes of this Act